FELÍCITA MELÉNDEZ VDA. DE LÓPEZ CANDELARIA ET AL., demandantes y recurridos, v. VICENTE GARCÍA ESPINOSA y JAIME TALAVERA SERRANO, demandados y recurrentes.

Número: 132      Resuelto: 5 de diciembre de 1962

*Roberto Martínez Rodríguez* y *A. Cadilla Ginorio,* abogados de los recurrentes; *Juan A. Díaz Marchand* y *R. V. Pérez Marchand,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La viuda y los hijos menores de un obrero que falleció mientras trabajaba interpusieron esta acción de daños y perjuicios contra los demandados recurrentes. Se alegó en la

demanda que el 19 de mayo de 1957 el causante trabajaba como obrero al servicio de Timoteo Jiménez Feliciano y a requerimiento del demandado Jaime Talavera fue a la finca del codemandado Vicente García para cortar y tumbar un número de palmas dentro de un vega de caña de azúcar de aquella finca; que el trabajo que el obrero fallecido habría de realizar era para beneficio de ambos demandados; que el obrero procedió a la tumba de las palmas que le fueron señaladas por su patrono Timoteo Jiménez sin que su referido patrono ni los demandados García y Talavera le proveyeran de los medios de seguridad y defensa que eran de rigor, o dieran al obrero protección alguna contra la fuerte brisa que allí y entonces prevalecía aumentando el riesgo del trabajo. Que cuando el obrero ya había tumbado algunas palmas y preparaba el derribo de otra, "una súbita ventolera sacó de quicio y echó aquella última palma sobre el referido obrero, atrapándole bajo su peso y causándole tan serias lesiones que su muerte se produjo horas después"; y que el accidente se debió a la incuria, descuido y falta de los demandados García y Talavera porque conociendo la topografía accidentada y peligrosa del lugar en que el obrero habría de cortar las palmas, y sabiendo que las condiciones atmosféricas eran adversas para dicho trabajo en aquel día, en momento alguna dieron estos demandados al obrero ayuda para su seguridad personal y defensa en tan peligrosa empresa. En la contestación se negaron los hechos de la demanda y se alegó como defensa que el causante era un obrero asegurado del patrono Timoteo Jiménez; que la muerte fue compensada por el Fondo del Seguro del Estado como un accidente del trabajo; que a petición del patrono Timoteo Jiménez el demandado García le regaló varias palmas de coco y dicho patrono procedió con su obrero asegurado a tumbarlas, sin que los demandados tuvieran intervención o relación alguna con el accidente.

Al comenzar la vista del caso, y después de un receso para conferenciar con los abogados en cámara, la Sala sentencia-

dora vertió en el récord la siguiente estipulación:—"La parte demandada admite las siguientes alegaciones: (1) Los demandados Vicente García Espinosa y Jaime Talavera Serrano son agricultores propietarios del barrio Pajuil de Hatillo, Puerto Rico. (2) El día 19 de mayo de 1957 el referido Antonio López Candelaria trabajaba como obrero al servicio de Timoteo Jiménez Feliciano. (3) Dicho obrero procedió a la tumba de las palmas que le fueron señaladas por su patrono Timoteo Jiménez Feliciano. (4) Cuando ya el obrero Antonio López Candelaria había tumbado varias de aquellas palmas y mientras preparaba el derribo de otra, se produjo su muerte por lesiones allí recibidas. Todas las demás alegaciones están negadas. La parte demandante admite que el obrero Antonio López Candelaria fue reportado como un obrero asegurado del patrono Timoteo Jiménez Feliciano y que su viuda e hijos fueron compensados por el Fondo del Seguro del Estado."

Consta en el récord que en 30 de octubre de 1957 el Fondo del Seguro del Estado dictó fallo compensando esta muerte, haciendo constar que el obrero trabajaba *bajo el patronato* de Timoteo Jiménez Feliciano; que había sufrido un accidente mientras derribaba una palma de coco para el *patrono indicado,* del cual falleció, y que el caso era uno protegido por la Ley de Compensaciones por Accidentes del Trabajo.[1] La Sala sentenciadora hizo las siguientes conclusiones de *hecho*:

---

[1] De acuerdo con el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo de 1935 según quedó enmendado por la Núm. 70 de 15 de junio de 1955, en aquellos casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero o sus beneficiarios de acuerdo con esa Ley le hubiere provenido bajo circunstancias que hicieren responsable a tercero de tal lesión, enfermedad o muerte, el obrero o sus beneficiarios pueden reclamar daños contra dicho tercero dentro del año siguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo. El Administrador en tales casos puede subrogarse en los derechos del obrero o sus beneficiarios y entablar procedimientos contra el tercero en nombre del obrero o sus beneficiarios dentro de los 90 días siguientes a la fecha en que su decisión fuere firme y ejecutoria. El obrero o sus beneficiarios no podrán

"1. . · · · · · · · ·

"2. Que aquel día, [19 de mayo de 1957] y a requerimiento del demandado Jaime Talavera Serrano, el obrero Antonio López Candelaria fue a la finca del co-demandado Vicente García Espinosa, en el barrio Pajuil de Hatillo, P. R., para cortar y tumbar un número de palmas de coco, para beneficio de ambos demandados.

"3. Que el día de referencia, soplaba una fuerte brisa, que aumentaba el riesgo del trabajo a realizar por dicho Antonio López Candelaria; y, no obstante saber que su tarea era peligrosa, los demandados no dieron al referido obrero ayuda material alguna, ni le proveyeron, siquiera, con medios de seguridad y defensa para la peligrosa tarea de derribar, él solo, aquellas palmas en condiciones tan adversas.

"4. Que debido a esa omisión y negligencia de los demandados para con el obrero Antonio López Candelaria, mientras éste preparaba el derribo de la sexta palma, en terreno quebrado y sin cables de sujeción o ayuda material alguna para su defensa, *el viento sacó de quicio y echó sobre dicho obrero aquella palma, que le atrapó* y causó tan serias lesiones que su muerte se produjo pocas horas después, en el Hospital de Distrito de Arecibo.

"5. Que si bien el obrero fallecido, según se deja dicho, apareció figurando como empleado aquel día 19 de mayo de 1957, por Timoteo Jiménez Feliciano, un patrono asegurado y derivando de él un jornal de $3.40, de hecho la prueba del caso ha demostrado que dicho obrero nunca había trabajado para ese patrono, y sí para los demandados Talavera y García. Que en efecto trabajaba para su beneficio en aquella fecha, pero los demandados no estaban para entonces cubiertos por el Fondo del Seguro del Estado."

En cuanto a las conclusiones de derecho, todas las de la Sala sentenciadora versaron sobre el derecho de los demandan-

---

entablar demanda contra el tercero hasta después de transcurridos 90 días a partir de la fecha en que la resolución del Administrador del Fondo fuere firme y ejecutoria. En este caso la resolución del Administrador fue dictada el 30 de octubre de 1957. La demanda se radicó en 6 de febrero de 1958. De todos modos, no aparece del récord, y así concluyó la Sala, que el Administrador ejercitara el derecho de subrogación en este caso interponiendo demanda contra los demandados como terceros causantes del daño. Cfr: *Waterman SS. Corp.* v. *Rodríguez,* 290 F.2d 175.

tes a instituir esa acción bajo el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, concluyendo además que al no aparecer de los autos ni surgir de la prueba que el Administrador del Fondo hubiera radicado demanda en esa o en otra Sala contra dichos demandados, se tenía por renunciado el derecho de subrogación que la ley le concede. (2) ▓

En este recurso los recurrentes sostienen que las conclusiones de hecho de la Sala sentenciadora no están sostenidas por la prueba, e impugnan la sentencia que los obliga a indemnizar en la cantidad de $14,000 y $1,000 de honorarios de abogado a base de que ellos incurrieron en culpa o negligencia. El recurso ante nos envuelve fundamentalmente un problema que toca las conclusiones de *hecho* de la Sala. Los recurridos arguyen en su alegato que tratándose de un recurso de revisión y no de una apelación, la función revisora queda limitada a las cuestiones de derecho y a la regla de la evidencia sustancial en cuanto a los hechos. Quizás sea beneficiosa una aclaración. Mediante el recurso de revisión creado por la Ley 115 de 1958 le fue concedida a este Tribunal discreción para revisar o no una sentencia del Tribunal Superior, distinto al recurso de apelación de antes y con posterioridad a dicha Ley el cual procedía y procede como cuestión de derecho. Una vez que el Tribunal ha ejercido su discreción en el sentido de elevar ante sí el caso para revisarlo, la función revisora es plena y no queda limitada únicamente a las cuestiones de derecho como ocurre con la revisión de los fallos de ciertas agen-

---

(2) Respecto a la conclusión de hecho *número 5,* si en el pleito que autoriza el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo o en cualquier otro pleito las cortes tienen facultad para admitir prueba y hacer pronunciamientos independientes en torno a la relación obrero-patronal de un accidente de trabajo cubierto por dicha ley, y a la condición o no de patrono asegurado, distintos a los pronunciamientos del Administrador sobre el particular, *quære.* Consideramos el caso bajo la misma teoría legal en que se interpuso la causa de acción en la demanda; de la estipulación, y de las propias conclusiones de derecho de la Sala, o sea, a tenor de la causa de acción que concede el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo en el caso de un accidente protegido por esta ley.

cias u organismos especiales, ni queda limitada a determinar si en los autos hay un *quantum* suficiente de evidencia que sostenga las conclusiones de hecho de la Sala sentenciadora. En tal caso nuestra función revisora procede en la misma extensión en que tradicionalmente se ha ejercido en los casos apelados y cubre la revisión de las conclusiones de hecho con sujeción a ciertas normas aplicables que hemos dejado claramente expuestas en *Sanabria* v. *Sucn. González*, 82 D.P.R. 885.

Veamos cuál fue la relación de los demandados en la ocurrencia de este accidente, según nos revela el récord. La viuda del obrero declaró que el día anterior al del accidente el demandado Talavera llegó al frente de su casa por la tarde como a una distancia de 60 pies y ella oyó que llamó al obrero por allí y hablaron que fuera al otro día a tumbar unas palmas que le faltaban, que iba a tener más gente él para tumbar las palmas y que mencionó a Timoteo Jiménez que iba con él a tumbarlas; que el obrero le dijo a ella que pensaba ir porque él le dijo que le trabajara ese día y que le tumbara las palmas ese día que era domingo porque después para el resto de la semana él tenía para seguir dándole trabajo; que hacía tiempo, como dos años atrás, el obrero había trabajado por día con Talavera picando y estibando caña. Dijo que la semana que murió,—el accidente fue domingo—trabajó con el demandado García, y la semana anterior había trabajado con Nicolás Rodríguez, que trabajó con Timoteo Jiménez ese día solamente que fue con él a tumbar las palmas. El padre del obrero declaró que al mucho tiempo después de la muerte vio a Talavera y no hablaron del accidente, únicamente que éste le dijo que le había avisado para tumbar las palmas pero que no le había dicho el día. El hijo del obrero declaró que fue a llevar el desayuno a su padre y lo encontró gravemente herido, que los únicos que estaban allí eran su papá y Timoteo Jiménez y no había nadie más, y éste le dijo ve donde tu abuelo y dile que necesitamos que venga acá; había seis palmas tumbadas y la séptima que lo mató. La palma que mató

a su padre era larga con una comba o curva en el medio, no era derecha.

En cuanto al codemandado García, no está en disputa el hecho de que el accidente ocurrió en su finca. El hijo del obrero declaró que después que él volvió con su abuelo había más gente allí, llegó el demandado García con su señora; que a mediados de junio de 1957 el testigo fue a casa de Vicente García acompañando a su abogado Lcdo. Díaz Marchand y aquél les señaló el sitio donde había ocurrido el accidente y en esa ocasión García dijo que las palmas se iban a tumbar porque le dañaban la finca y había ratones en las pencas que se comían la caña y hacían daño, que las había mandado a tumbar. Lo anterior es todo el contenido de la prueba de los demandantes en cuanto a la relación de estos demandados con el accidente.

La única prueba que existe en el récord sobre la manera en que ocurrió la muerte fue aportada por el testigo Timoteo Jiménez quien declaró por parte de los demandados. Dijo que las palmas estaban al borde u orilla de un llano o abra de unas cinco cuerdas sembradas de caña con cerros a la vuelta redonda. Se habían tumbado cinco palmas y la que produjo el accidente era bastante larga y tenía una vuelta en el medio. Lo que ocurrió fue descrito así en las propias palabras del testigo: "Cuando él soltó la palma, que la palma se fue sola al suelo, entonces él se quedó mirando la palma que se levantó con el corte, él está mirando y cuando dio la caída el tronco otra vez ahí fue que le dio el golpe. . .La palma está en esta posición donde él viene a cortar la palma. Le da por este lado primero y continúa por acá y después le dio sobre este lado y cuando la palma cayó, que la palma da una vuelta, la terminación de la palma que dio una vuelta, el tronco llegó e hizo así y se levantó y cuando se levantó él está mirando de frente para allá, sin mirar el peligro de la palma, y cuando el tronco hizo así fue que le dio a él. . .Solo le dio un golpe sobre el cerebro. . .Era una palma muy alta que tenía una vuelta. . .

como en la mitad de la palma tenía la vuelta...La soltó y se puso a mirar la palma cuando diera o cayera en el suelo... llegó y cayó y como tenía una vuelta en el medio, al llegar la terminación allá, primero dio la vuelta el tronco y se levantó y él está mirando para la palma cuando volteó el tronco en el suelo y le dio en el cerebro...P. ¿Con qué parte lo alcanzó a él?—Con el corte, donde la cortó con la punta que él había cortado. P. ¿En algún momento la palma le cayó encima?— En ningún momento. [Contrainterrogado] "Cuando la palma hizo así para desprenderse entonces dejó de darle y se puso a mirar para la palma...P. ¿Corrió para el lado?—Se quedó aquí en el mismo tronco donde la estaba cortando...El se quedó a una distancia...P. ¿Bien pegado?—Precisamente si está despegado no le da...P. ¿La palma cae para el frente? —Si, señor. P. La comba para dónde la tenía, ¿para adentro o para arriba?—Para arriba. P. ¿Entonces la palma que tiene una comba para arriba cae y entonces así rebota para arriba?—El tronco abajo. P. ¿No rebotó la comba?—No, señor. El corte fue lo que rebotó para arriba, porque al dar la comba en tierra entonces el corte hizo así."

El testigo declaró además que dos semanas antes le había pedido a García que le regalara unas palmas, éste le autorizó a cortar las que necesitara cuando quisiera; había quedado con el obrero en cortarlas cuando tuviera oportunidad de hacer el trabajo y esa mañana el obrero lo procuró en su casa estando él aún acostado y se fueron a hacer la labor. El testigo habló esa misma mañana con García para que supiera que iban a cortar y éste le reiteró su autorización y le repitió que tumbara las que quisiera. Reportó el accidente al Fondo del Seguro del Estado porque él era un patrono asegurado dedicado al cultivo de caña, en que regularmente utilizaba de 10 a 12 hombres cuando cortaba caña y como tres peones cuando no había corte. Dijo que buscó al obrero para este trabajo porque era un hombre que estaba impuesto a trabajar de hacha y entendía ese trabajo, habían trabajado tumbando

madera para hacer carbón y lo conocía como un "hachador" que sabía trabajar de hacha. En la labor intervinieron sólo ellos dos. Nadie más estaba allí.

El Fondo del Seguro del Estado determinó que éste fue un accidente protegido por la Ley de Compensaciones por Accidentes del Trabajo, y que el patrono del obrero al ocurrir el mismo lo era Timoteo Jiménez, un patrono asegurado.([3]) No son de aplicación por lo tanto ni la Ley del 1ro. de marzo de 1902,([4]) ni disposición otra alguna de ley de tipo general que determine la responsabilidad de un patrono para con su empleado o de una persona para con otra por razón de negligencia, aplicables en aquellos casos en que el accidente no está cubierto por la Ley de Compensaciones por Accidentes del Trabajo; ni podría tomarse este caso como la demanda de daños que un obrero está en libertad de interponer contra un patrono no asegurado; todo ello a tenor de los artículos 15, 16 y 20 de la referida Ley. Cfr. *Wirshing & Co.* v. *Buscaglia, Tes.*, 64 D.P.R. 364; *Onna* v. *The Texas Co.*, 64 D.P.R. 520; *Rivera* v. *Comisión Industrial*, 67 D.P.R. 561.

Se decide este caso única y exclusivamente por lo dispuesto en el artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo tal como dicho artículo quedó enmendado por la Ley 70 de 15 de junio de 1955. La cuestión a resolver es si

---

([3]) Aun cuando aceptáramos que la Sala sentenciadora tenía jurisdicción y facultad, bajo la causa de acción aquí ejercitada, para hacer pronunciamientos en este sentido en contrario, los hechos no controvertidos en el récord demuestran la relación obrero-patronal determinada por el Fondo y no otra.

([4]) Esta ley hace responsable a un patrono por el daño que sufra el empleado, que esté ejercitando en su ocupación el debido celo y diligencia, por causa de cualquier defecto en el estado de vías de comunicación o en el de las obras o máquinas que se usen en relación con la empresa del patrono, o en ella misma, y el daño fuere originado, o no descubierto o no remediado, por la negligencia del patrono, o de cualquier persona a su servicio, a quien éste hubiese confiado el deber de hacer que dichas vías, obras o máquinas estuviesen en buen estado; o por causa de la negligencia de cualquier persona al servicio del patrono, encargada de la superintendencia como su solo o principal deber; o . . . etc. . . . .

a la luz de la prueba en el récord la muerte le provino al obrero *bajo circunstancias* que hicieran responsables de la misma a los aquí demandados como terceras personas.

Establecido el hecho que no fueron ellos los patronos del obrero en cuanto a esta labor respecta, sin que tampoco fueran agentes de aquél encargados del trabajo o de la vigilancia o superintendencia del mismo, no venían los demandados obligados en ley a proveer aquellos medios de seguridad para realizar la obra que se describen en la demanda, ni tenían la obligación en ley de impedir que el trabajo se realizara bajo las alegadas circunstancias adversas del tiempo, omisiones éstas que en conclusión de la Sala sentenciadora fueron causantes del daño, asumiendo que en uno y otro caso el accidente se debiera a esos factores.

Aun cuando a los demandados les hubiera correspondido en ley alguna obligación de velar allí por la seguridad del obrero, los hechos indisputables en el récord demuestran que el accidente no ocurrió por razón de tales omisiones debido a que mientras preparaba el derribo de esta palma, después de haber tumbado varias, una súbita ventolera la sacó de quicio y la echó sobre el obrero atrapándole bajo su peso, según se alegó en la demanda y así concluyó como un hecho probado la Sala sentenciadora. Según fue descrito por Jiménez, el accidente no se debió ni a las condiciones del tiempo ni a la ausencia de otros factores de seguridad alegados. En las condiciones allí presentes la víctima había cortado varias palmas sin sufrir daño. Todo indica que el hecho fue un accidente desgraciado debido a que esta última palma tenía una comba o curvatura en el medio, que tal como lo describiera gráficamente el testigo Jiménez, única persona que lo presenció en el sitio, respondió a un fenómeno natural de las leyes físicas al dar la comba o curvatura central de la palma en tierra, perfectamente explicable y lógico para los de algún entendimiento de estas cosas, pero que infortunadamente el obrero no alcanzó a prever o anticipar para resguardarse del peligro que ello envolvía y se quedó mirando caer la palma

sin apartarse del extremo cortado que lo lesionó con el movimiento de reacción.

Los recurridos invocan además la responsabilidad de los demandados bajo la doctrina del deber que tienen los dueños de una propiedad de velar porque las personas autorizadas o permitidas a estar en la misma no sufran daño. No hay duda de que el demandado García autorizó a este obrero a estar en su finca al igual que a su patrono, pero dicha norma de responsabilidad no le es aplicable ya que el daño no fue causado por condición peligrosa alguna visible o no visible que él mantuviera o permitiera existir en la propiedad. Invocan también la doctrina de *res ipsa loquitur.*. La forma en que ocurrió el accidente descarta toda posibilidad de la aplicación de esta doctrina al caso, la que rige en aquellas situaciones en que un accidente que causa daño de ordinario no debe ocurrir y el agente que lo causa está bajo el dominio y gobierno de una persona, en cuyo caso la doctrina concede al perjudicado como un punto de partida la negligencia de esa persona. Cfr: *Matta* v. *Pueblo Super Market,* 80 D.P.R. 514; *Martínez* v. *U. S. Casualty Co.,* 79 D.P.R. 596, 602; *Rodríguez* v. *Aponte,* 78 D.P.R. 756, 761; *Cintrón* v. *A. Roig, Sucrs.,* 74 D.P.R. 1028, 1035; *Román* v. *Mueblería Central,* 72 D.P.R. 341; *Hermida* v. *Feliciano,* 62 D.P.R. 55. *Ramos* v. *Aut. de Fuentes Fluviales,* 86 D.P.R. 603 (1962). En la tarea de tumbar árboles nada más natural y corriente que el que se produzcan accidentes y lesiones, dependiendo del mayor o menor grado de previsión y cuidado con que se ejecuta la labor.

La pérdida de una vida es un hecho penoso. Mucho más lo es aún cuando la vida se pierde en un accidente del trabajo mientras un ser humano está en la noble función de ganarse su sustento y el de los suyos. Nadie querría que la familia de un obrero víctima de su trabajo no tenga el necesario amparo. Ante los hechos no disputables en el récord, sería forzar los conceptos de la responsabilidad legal hacia otros si sostuviéramos que el accidente del trabajo en este caso ocurrió

bajo circunstancias que hicieron responsables a los demandados del daño como terceros a tenor del artículo 31 de la Ley de Compensaciones por Accidentes del Trabajo, o a tenor de cualquier otro precepto que imponga responsabilidad legal por acto u omisión.

*Se revocará la sentencia apelada y se dictará otra declarando sin lugar la demanda, con imposición de las costas ante el Tribunal de instancia a los demandantes, sin incluir honorarios de abogado.*