MERCEDES MALDONADO VDA. DE MALDONADO, ETC., demandantes y recurrentes, *v.* ARTURO (TUTO) MÉNDEZ Y EL MUNDO, INC., demandados y recurridos.

*Número:* R-62-129      *Resuelto:* 2 de mayo de 1963

---

*A. Viera Martínez,* abogado de los recurrentes; *Rivera Zayas, Rivera Cestero & Rúa,* abogados de El Mundo, Inc.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Antonio Maldonado Maldonado murió a consecuencia de un accidente de aviación ocurrido el 7 de agosto de 1955 en la bahía de San Juan. La madre y sus dos hermanas interpusieron demanda de daños contra Arturo Méndez y El Mundo, Inc., alegando que el accidente se debió exclusivamente a la negligencia de estos demandados. Tenemos ante nuestra

consideración el recurso interpuesto por las demandantes contra la sentencia de la Sala de San Juan del Tribunal Superior que declaró sin lugar la demanda.

En una conferencia celebrada con anterioridad al juicio las demandantes expresaron su posición en el sentido de que no tenían que probar acto alguno de negligencia por ser Antonio Maldonado, al ocurrir el accidente, un empleado de los demandados, y éstos, patronos de aquél. En adición alegaron las demandantes en la conferencia que los demandados fueron negligentes por haberse utilizado para carga un avión que no era de carga; y porque el avión fue cargado con más peso del que podía soportar.

Sobre la relación obrero-patronal, la Sala sentenciadora hizo las siguientes conclusiones de hecho:

"El día 7 de agosto de 1955 el demandado Arturo Méndez era dueño de un avión Stinson Modelo V-77, registrado bajo el número U.S.-N69391 el cual dedicaba ese día a cumplir un contrato de transportación de periódicos que como contratista independiente había hecho con la co-demandada El Mundo, Inc. Este contrato se había hecho a manera de experimento y para llevar a cabo esta función Arturo Méndez utilizaba como empleado al piloto Jaime Rivera aunque también en otras ocasiones había utilizado a los pilotos Mike Fernández y Plácido Díaz . . . Antonio Maldonado Maldonado no era empleado de Arturo Méndez pero sí había pedido permiso a éste para hacer ciertas prácticas junto con Jaime Rivera a cuyas prácticas ellos se referían como 'chequearse', y en ocasiones, a petición suya, recibió de Méndez algún dinero para ayudarse en sus gastos de transportación desde el aeropuerto. Para ese tiempo Maldonado ya era piloto y hacía cierto vuelo con la West Indies Airways por lo cual recibía cierta compensación. Para esa misma fecha Arturo Méndez tenía un garage de reparación de automóviles y ni él ni El Mundo, Inc., habían hecho extensivas sus pólizas con el Fondo del Seguro del Estado para cubrir la operación de la transportación de los periódicos por medio del avión Stinson . . . El Mundo, Inc., no tenía control alguno sobre el avión de Méndez o sobre el empleado de Méndez. El Mundo, Inc., se limitaba a

entregar los ejemplares a Méndez y a pagar a éste una determinada cantidad que fluctuaba entre $35.00 o $40.00 por viaje."

Después de concluir que el accidente se debió a un error de pilotaje del propio Maldonado quien en ese momento gobernaba el avión, y no a exceso de carga o a hecho otro alguno negligente imputable a los demandados, la Sala sentenciadora concluyó que era aplicable el Art. 1802 del Código Civil y declaró sin lugar la demanda.

En este recurso las demandantes-recurrentes sostienen que la Sala sentenciadora cometió error: (1) al fallar que su acción se rige por el Art. 1802 del Código Civil, habiendo señalado la prueba que ésta era una acción especial de daños y perjuicios por un accidente del trabajo contra patronos no asegurados bajo el Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo; (2) al concluir que Antonio Maldonado no era empleado de Arturo Méndez; y (3) al concluir que la causa próxima del accidente se debió a negligencia, descuido o impericia o falta de experiencia del propio Maldonado y al resolver que el accidente no se debió a exceso de peso.

Surge de los autos y así concluyó la Sala sentenciadora, que en relación con el piloto Jaime Rivera, quien perdió su vida en el mismo accidente, hubo procedimientos ante el Fondo del Seguro del Estado y la Comisión Industrial en virtud de los cuales dicha Comisión resolvió el 5 de julio de 1956 que Arturo Méndez era un patrono de Jaime Rivera, no asegurado, y ordenó al Administrador que determinara la compensación que procedía como un accidente del trabajo para que el patrono y aquí demandado Arturo Méndez la satisficiera a los beneficiarios de Rivera de la manera dispuesta por ley. Este Tribunal, en 20 de noviembre de 1956, se negó a revisar ese fallo. Surge también del expediente ante la Comisión Industrial (Exh. 5 de las demandantes), que los beneficiarios de Jaime Rivera comparecieron posteriormente a la Comisión solicitando que se obligara a la empresa El Mundo, Inc., a satisfacer, con independencia de Arturo Mendez, la compensa-

ción fijada por el Fondo, petición que se hizo bajo la teoría de que El Mundo debía considerarse en ese caso como un patrono que utilizaba los servicios de un contratista independiente no asegurado y por tal razón dicha empresa venía obligada a responder con su propio seguro. La Comisión Industrial resolvió que tal solicitud no procedía y denegó la misma en 30 de abril de 1957.

Las recurrentes no han elevado la transcripción de la evidencia oral. No tenemos base para sostener que la conclusión de la Sala sentenciadora en el sentido de que Antonio Maldonado no era empleado de Arturo Méndez ni de El Mundo sea incorrecta. A tenor de cierta prueba documental que fue elevada, no puede decirse que dicha conclusión carezca de base en el récord, o sea totalmente insostenible.

En la misma situación nos encontramos en cuanto a las conclusiones de la Sala sentenciadora sobre cómo ocurrió el accidente y cuál fue la causa del mismo. Determinó la Sala a este respecto:

"Méndez recibió los periódicos de manos de los empleados del periódico El Mundo y ayudó a cargarlos. En el momento del despegue del avión Maldonado estaba en los controles y en ese momento Méndez le dijo al piloto Rivera que no dejara a Maldonado llevar el avión pero le contestó que sabía lo que hacía. El avión Stinson perteneciente a Méndez estaba cualificado tanto para pasajeros como para transportar carga. No existe ninguna reglamentación o impedimento alguno para que un avión se dedique indistintamente a transportar pasajeros y a transportar carga. El control del avión lo tenía Méndez como propietario a través de su empleado el Capitán Jaime Rivera, quien era el que determinaba si el avión salía o no y si zarpaba o despegaba . . . .

"A pesar de la advertencia de Méndez, ese día 7 de agosto de 1955, aproximadamente a las 4:00 de la tarde, el avión Stinson conducido por Antonio Maldonado Maldonado y con el Capitán o piloto Jaime Rivera Cardona a su lado se deslizó hasta la posición de despegue, o sea hacia la pista norte del campo de aviación y se dirigió al lado Este de dicha pista. La torre de control autorizó al avión que despegara en la pista 27 y le dio la dirección

y velocidad de viento como SSW-14. A las 4:17 la torre de control autorizó el despegue del avión. El avión estaba entonces preparado para despegar en dirección Este hacia el Oeste y tenía una pista de alrededor de 4,000 pies. Tenía los 'flaps', o sea los frenos de aire en posición hacia abajo o extendidos. El avión despegó después de una carrera relativamente corta, y cuando pasó frente a la torre tenía una altura estimada de cuarenta a doscientos pies antes de llegar al fin de la pista, pero ya elevado se notó que el piloto retractó o cerró los 'flaps' y en ese momento el avión tenía una posición de nariz en alto ('nose high'). Aproximadamente 1,000 pies después de la terminación de la pista y ya por lo alto, el avión giró hacia la derecha, perdió altura y cayó en el agua en una posición de nariz hacia abajo, perdiendo la vida en este accidente tanto Antonio Maldonado Maldonado como Jaime Rivera Cardona.

"El accidente anteriormente relatado no se debió a exceso de carga, ya que el avión, según demuestra la prueba pericial creída por el Tribunal, se pudo elevar perfectamente bien y si hubiera tenido un exceso de carga que hubiera causado limitaciones a dicho avión, éste no se hubiera podido elevar en un trecho tan corto de la pista como el que recorrió antes del despegue.

"El accidente se debió a un error de pilotaje del piloto Antonio Maldonado Maldonado al cerrar los 'Flaps' a una altura de 100 a 200 pies cuando la buena técnica y la correcta conducción del avión requería que continuara volando con los 'flaps' puestos hasta alcanzar una altura de 500 o 600 pies. A este error de pilotaje se sumó el error consistente también en haber quitado los 'flaps' en el momento en que el avión tenía la posición de nariz arriba, ya que la técnica indica, según el testimonio pericial creído por el Tribunal, que para poder quitarles los 'flaps' era necesario bajar la nariz del avión y darle más velocidad horizontal.

"Cuando el piloto Maldonado, se vió en la posición de peligro que él mismo había creado al quitarle los 'flaps' al avión, en vez de girar hacia la izquierda, o sea en contra del viento que en ese momento venía en una dirección de Sur Suroeste, cometió el error de girar hacia la derecha, a favor del viento que venía, como hemos dicho antes en esa dirección de Sur Suroeste, y al empezar a girar hacia la derecha el avión perdió altura y cayó en picada al agua."

A tenor de lo dicho determinó la Sala como cuestión de hecho que el accidente se debió exclusivamente a la negligencia e impericia de Antonio Maldonado. No tenemos la transcripción de la prueba oral por lo que no estamos en condiciones ahora tampoco de decidir que las anteriores conclusiones son erróneas. Por la prueba documental que se nos ha traído podemos decir que las mismas no están totalmente carentes de base. De un informe sobre el accidente firmado por E. M. Mundy, Aviation Safety Advisor (Exh. 12 de las demandantes), surge que este avión podía tener un peso máximo de 4,000 libras, su peso vacío era de 2,554.75 por lo que era permisible una carga de 1,445.25 libras. Los periódicos pesaban 1,182 libras. No aparece afirmativamente el peso de los pilotos. Se dice en el informe que el avión tenía un certificado de que estaba en buenas condiciones de vuelo. A la luz de toda la prueba la Sala sentenciadora concluyó que el accidente no se debió a exceso de carga.

Resta el planteamiento de derecho al efecto de que hubo error al resolverse el caso aplicando el Art. 1802 del Código Civil. El Art. 15 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 1935, disponía para la fecha de estos hechos que de ocurrirle un accidente a un obrero o empleado que trabajara para un patrono que en violación de la ley no estuviere asegurado, el Fondo determinaría la compensación y el Secretario de Hacienda cobraría al patrono la misma. Si un patrono que empleara tres o más obreros o empleados dejaba de asegurarse de acuerdo con dicha Ley, cualquier obrero o empleado perjudicado o sus beneficiarios podían proceder contra tal patrono radicando una petición de compensación ante la Comisión Industrial, y además, podrían ejercitar una acción contra el patrono por daños y perjuicios lo mismo que si esa Ley no fuera aplicable. La acción debía interponerse mediante demanda jurada y se disponía que en tal procedimiento no constituiría defensa para el patrono el hecho de que el obrero o empleado hubiera sido

culpable de negligencia contributoria o que hubiera asumido el riesgo de la lesión o que la lesión hubiera sido causada por la negligencia de un contratista o subcontratista independiente, a menos que tal contratista o subcontratista independiente se hubiera asegurado con arreglo a las disposiciones de la Ley.

Por otra parte, el Art. 16 de dicha Ley ha dispuesto que en todos los casos de enfermedades, lesiones o muertes ocurridas a obreros o empleados no sujetos a sus disposiciones, la responsabilidad del patrono será la misma que si la Ley no existiera, independiente a cualquier acción que pueda tener el obrero o empleado perjudicado de acuerdo con lo dispuesto en el Art. 1802 del Código Civil.

Tanto el Art. 15 como el Art. 16 tienen como base una relación obrero-patronal. En el primero se debe ser obrero o empleado pero el patrono no ha cumplido con la obligación de asegurarse. No sólo se le da en tal caso la compensación que dispone la Ley Núm. 45, sino que se le permite demandar al patrono en daños en una acción corriente, Cf. *Rivera* v. *Comisión Industrial*, 67 D.P.R. 561 (1947); *Castro* v. *Marrero*, 54 D.P.R. 201, 205 (1939), aunque con la particularidad o limitación de que al patrono no se le permitirá invocar la defensa de que el obrero fue negligente o asumió el riesgo. Cf. *Bonilla* v. *Mitchel*, 51 D.P.R. 126, 130 (1937). Esta limitación de defenderse es a manera de un freno para que no se derrote la filosofía general en cuanto a negligencia del estatuto mediante el no asegurarse. El Art. 16 se basa igualmente en la relación obrero-patronal, sólo que el obrero no es de los comprendidos en la Ley de Compensaciones por Accidentes del Trabajo. De ahí que se mantenga la responsabilidad del patrono como si esa Ley no existiera, independientemente de la responsabilidad aquiliana que se debe bajo el Art. 1802 del Código Civil a cualquier persona que sufre daños. (1).

(1) La Ley de 1ro. de marzo de 1902 responsabiliza a un patrono por los daños que sufre el obrero o empleado por razón de defectos en los meca-

■ Los autos no demuestran que el Administrador del Fondo del Seguro o la Comisión Industrial hicieran pronunciamiento alguno en el sentido de que al ocurrir el accidente Antonio Maldonado era un empleado de Arturo Méndez, quien en el mismo accidente fue declarado patrono no asegurado en cuanto al otro piloto Jaime Rivera. Aparentemente no se llevaron procedimientos sobre relación obrero-patronal ante esos organismos. En tales circunstancias, la Sala sentenciadora tenía facultad para hacer pronunciamientos en cuanto a la existencia o no existencia de una relación obrero-patronal entre Maldonado y Méndez y la empresa El Mundo, Inc. Cf. *Vda. de López* v. *García Espinosa*, 86 D.P.R. 702 (1962) (escolio 2). De haber existido un pronunciamiento en tal sentido, ya fuera por la Comisión Industrial o por la propia Sala sentenciadora, las recurrentes tendrían razón en sostener que la situación debería regirse por las disposiciones del Art. 15 antes transcritas, y la negligencia de Maldonado y cualquier riesgo asumido por él no constituiría defensa para los demandados. La Sala sentenciadora concluyó que Maldonado no era empleado de Méndez, ni de El Mundo, a la luz de la prueba que tuvo ante sí y no tenemos base para alterar esa determinación. En consecuencia de ello éste es un caso que no se rige por la Ley de Compensaciones por Accidentes del Trabajo, y los beneficiarios de Maldonado no estaban en la situación de no tener que probar negligencia contra los demandados, *Rivera* v. *Comisión Industrial*, supra, ni los demandados impedidos de interponer como defensa la negligencia de aquél.

Lo anterior no quiere decir precisamente que los demandados estarían en todo caso exentos de responsabilidad. Si en

nismos que se usen en relación con la empresa del patrono o en la empresa si el patrono fuere negligente en no descubrir o remediar dichos defectos; o por causa de la negligencia de cualquier persona al servicio del patrono, encargada de la superintendencia. Esta ley, distinto al Art. 15 de la Ley 45, requiere que el empleado esté ejercitando en su ocupación el debido celo y diligencia.

alguna forma por acción u omisión actuaron con culpa o negligencia, bien directamente (Art. 1802) o bien a través de sus dependientes o empleados (Art. 1803), ellos responderían del daño causado. Los hechos, tal como los concluyó la Sala sentenciadora, no demuestran tal responsabilidad. Si bien aparece que el piloto Rivera como empleado del demandado Méndez admitió a Maldonado en el avión y determinó y permitió que lo condujera, la prueba documental demuestra que ése estaba autorizado como piloto para hacerlo y tenía certificado de estar en condiciones físicas de volar. La prueba pericial, según fue apreciada por la Sala, tendió a demostrar que el accidente no se debió a exceso de carga ni a condición otra alguna del aparato peligrosa. Afirmativamente se demostró que el avión estaba en buenas condiciones de vuelo. Ni Méndez, o su empleado Rivera, ni El Mundo, realizaron acto u omisión negligente o culposo que motivara la caída del aparato y la muerte de Maldonado y de Rivera.

*La sentencia que declaró sin lugar la demanda será confirmada.*