# 97 DTA 156

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

RAFAEL ROGERS SANCHEZ, ALLENY HERNANDEZ OLIVIER Y LA
SOCIEDAD LEGAL DE GANANCIALES POR AMBOS CONSTITUIDA
Demandantes-Recurridos

v.

INTERTYRE CORPORATION, CORPORACION A, CORPORACION B,
ASEGURADORA A, ASEGURADORA B
Demandados-Peticionarios

Núm. KLCE-95-00759

San Juan, Puerto Rico, a 30 de julio de 1997

Panel integrado por su Presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso de *Certiorari* que nos ocupa interesa la revocación de una resolución emitida el 8 de septiembre de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, Dora T.

Peñagarícano Soler, Juez. Mediante ésta, dicho foro declaró No Ha Lugar una moción de desestimación que fue presentada por la aquí peticionaria, Intertyre Corporation, predicada en que la demanda instada se encontraba prescrita. Fundamentó su dictamen en que *"en estos momentos el Tribunal no tiene conocimiento sustancial de cuándo es que comenzó el término descriptivo [sic] [prescriptivo] del conocimiento del daño"*.

Inconforme con tal determinación, la demandada-peticionaria interpuso el recurso de epígrafe imputando la comisión de los siguientes errores:

*"1. Erró el Tribunal de Primera Instancia al no desestimar una demanda a todas luces prescrita a la fecha en que fue radicada, constando en autos la admisión del propio demandante-recurrido de que tuvo conocimiento del daño sufrido desde el mismo momento del accidente, no afectando el decursar del término prescriptivo, el que se alegue que posteriormente advino en conocimiento del daño total resultante.*

*2. Erró el Honorable Tribunal de Instancia al determinar que no procedía la imposición de Honorarios de Abogado por la conducta marcadamente temeraria de los abogados de la recurrida."*

Resolvemos que en las circunstancias particulares del caso que nos ocupa, y contrario a lo intimado en nuestra resolución sobre mostración de causa, resulta procedente denegar la expedición del auto solicitado.

## I

El 9 de junio de 1993 el co-demandante-recurrido, Sr. Rafael Rogers Sánchez (en adelante señor Rogers), fungía como asistente de mecánico en el establecimiento de la peticionaria Intertyre Corporation (en adelante Intertyre), posición que ocupaba en calidad de empleado permanente. En dicha fecha, mientras llevaba a cabo labores propias de su empleo, el señor Rogers sufrió un accidente del trabajo como resultado del cual fue referido al Fondo del Seguro del Estado. ■

Luego de la evaluación correspondiente, el día 10 de junio de 1993, el Dr. Gil Román, médico del Fondo, le diagnosticó un espasmo muscular en la espalda, lo que le ocasiónaba dolor a nivel lumbosacral de la columna vertebral en flexión, extensión y en movimientos laterales. Le ordenó radiografías de la espalda y le prescribió Robaxin y Panadol, un relajante muscular y un analgésico, respectivamente. ■ Además, fue autorizado a recibir *"tratamiento mientras trabaja"*.

El diagnóstico de espasmo muscular del señor Rogers fue reconfirmado en citas subsiguientes, y éste fue dado de alta definitivamente el 3 de agosto de 1993, sin incapacidad, con diagnóstico de espasmo en los músculos de la espalda. Esta decisión del Fondo fue apelada por el señor Rogers ante la Comisión Industrial, donde se le ordenaron pruebas y evaluaciones adicionales. Le fue así practicado un CT Scan de la columna vertebral, específicamente del área lumbosacral, prueba que reveló que el señor Rogers sufría de *"left posterolateral disk protrusion at L5-S1 with impingement of the L5 nerve root. Broad-based posterior disk protrusion at L4-L5 with thecal sac impingement."* ■ Dicho diagnóstico fue realizado el día 6 de octubre de 1994 y fue confirmado por un estudio de resonancia magnética (MRI, por sus siglas en inglés) practicado el día 19 de octubre por el Dr. Germán Chávez. ■ Dicho estudio fue ordenado por la neuróloga Dra. Julia Torres, médico en la práctica privada, a quien acudió el señor Rogers luego del diagnóstico emitido por el Fondo. ■

Con miras a obtener alivio de su condición, posteriormente el señor Rogers fue sometido a una cirugía de su columna vertebral, cuya prognosis al momento resulta incierta. ■

Mientras lo antes expuesto acontecía, según alegado por el recurrido en la demanda cuya desestimación se solicita, el 3 de noviembre de 1993 Intertyre despidió al señor Rogers. ■ Una semana más tarde, o sea, el día 10 de noviembre, mediante decisión del Administrador del Fondo que fue notificada el 9 de diciembre de 1993, Intertyre fue declarada Patrono No Asegurado con relación al accidente sufrido por el señor Rogers el día 9 de junio de 1993.

Dicha determinación no fue apelada por Intertyre, por lo cual la misma advino final y firme. ■

Fue a la luz del trasfondo antes expuesto, que Intertyre radicó moción en solicitud de desestimación invocando a *Vega Lozada v. J. Pérez & Cía., Inc.,* 137 D.P.R. ___ (1994), **94 J.T.S. 56,** argumentando que la acción instada en su contra por los peticionarios se encontraba prescrita por haber sido interpuesta luego del año a partir de que el señor Rogers fuera notificado de la resolución del Fondo declarándola patrono no asegurado en relación con dicho accidente. ■ En apoyo a su contención, argumentó que la acción de la demandante nació a partir del 9 de diciembre de 1993, fecha en que se le notificó al señor Rogers copia de la resolución del Fondo declarando a Intertyre patrono no asegurado. Señaló, además, que, conforme a las propias alegaciones de la demanda, el señor Rogers tenía conocimiento de los daños desde la misma fecha de la ocurrencia del accidente, a saber, 9 de junio de 1993.

En oposición, la aquí recurrida, invocando el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, ■ argumentó ante el tribunal de instancia que, en su caso, el término prescriptivo comenzó a decursar a partir del 6 de octubre de 1994, fecha en que el señor Rogers tuvo conocimiento del daño y pudo ejercitar su acción. ■ En apoyo a su contención argumentó que el diagnóstico sobre los **discos lesionados** del señor Rogers en su columna vertebral constituia un daño distinto al diagnosticado originalmente por el Fondo, ■ un **espasmo muscular,** razón por la cual su acción en daños, incoada el 28 de abril de 1995, no estaba prescrita al haber sido presentada dentro del término de un año desde que advino en conocimiento del mismo; o sea, a partir del momento del diagnóstico de discos herniados el día 6 de octubre de 1994.

Con el beneficio de los escritos presentados por ambas partes y de la argumentación oral llevada a cabo en una vista celebrada el 8 de septiembre el tribunal de instancia emitió ese mismo día la resolución que es objeto del presente recurso, declarando No Ha Lugar la moción de desestimación de la peticionaria Intertyre. Al así resolver, fundamentó su dictamen en que no tenía todos los elementos de juicio necesarios para determinar cuándo es que el demandante recurrido advino en conocimiento del daño reclamado en la acción por él instada.

## II

En términos generales, el ejercicio del derecho de instar una acción en daños y perjuicios está reglamentado en nuestra jurisdicción por las disposiciones del Código Civil, 31 L.P.R.A. sec. 5141 *et seq.* Sin embargo, las mismas pueden estar supeditadas a las disposiciones de una ley especial la cual gobernará las situaciones particulares en ella contempladas. En dicho caso, el Código Civil será un cuerpo legal supletorio que se convertirá en el ordenamiento aplicable cuando tal ley especial así lo disponga o en ausencia de disposición aplicable. Es esa precisamente la situación que enfrentamos en el recurso que nos ocupa, en el cual consideramos la acción en daños y perjuicios incoada por un obrero lesionado en contra de su patrono no asegurado, donde, en primera instancia, regirá la Ley de Compensación por Accidentes del Trabajo. ■

Como es sabido, la ley de referencia le concede inmunidad por accidentes laborales a todo patrono asegurado a través del Fondo del Seguro del Estado. La imnunidad así adjudicada a dicho patrono se traduce en inexistencia de causa de acción. *Administrador del Fondo del Seguro del Estado v. Flores Hermanos Cement Products,* 107 D.P.R. 789, 792 (1978). Ahora bien, por excepción, en su Artículo, 11 L.P.R.A. sec. 16, dicha ley faculta al obrero perjudicado o a sus beneficiarios a instar una acción en daños y perjuicios si el patrono no está asegurado. En tal caso la acción, aunque se rige principalmente por las normas generales del Código Civil y la jurisprudencia, *Rosario Rivera v. Ramos,* 105 D.P.R. 114 (1976), también está regulada en parte por la referida ley, 11 L.P.R.A. sec. 16. ■ *Vega Lozada v. J. Pérez, supra; Viuda de Andino v. Autoridad de Fuentes Fluviales,* 93 D.P.R. 170 (1966); *Viuda de Maldonado v. Méndez,* 88 D.P.R. 263 (1963). Deben así concurrir los tres (3) requisitos o elementos necesarios para que prospere una acción civil extracontractual; a saber, la ocurrencia de un daño, la existencia de culpa o negligencia del demandado y la relación causal entre ellos. Deberá, además, alegarse y probarse el hecho fundamental de que el patrono no está asegurado por el Fondo. *Vega Lozada v. J. Pérez & Cía., supra,* a la pág. 11805.

Siendo la acción de daños y perjuicios en contra de un patrono no asegurado una de naturaleza excepcional, toda vez que, de estarlo, estaría protegido por la inmunidad patronal que provee la ley, el término prescriptivo para ejercer la acción de daños y perjuicios en tales casos *"comienza a transcurrir desde la fecha en que el Fondo notifique que el patrono no está asegurado". Id.,* a la pág. 11808.

Dirigiendo nuestra atención a la situación particular del caso que nos ocupa, surge de las alegaciones de la demanda que el señor Rogers sufrió una lesión en su espalda, condición que fue diagnosticada como un espasmo de los músculos, la cual fue posteriormente relacionada con el accidente del trabajo que sufriera el 9 de junio de 1993. ▨ Surge de los autos, además, que el recurrido fue notificado el 9 de diciembre del dictamen del Fondo declarando a Intertyre patrono no asegurado en relación con el accidente que dio base a la interposición de la demanda; determinación que no fue recurrida por Intertyre. Habiéndose presentado la demanda el 28 de marzo de 1995, es decir, en exceso de un (1) año desde la notificación de la decisión del Fondo declarando a Intertyre patrono no asegurado, argumentó el demandante-recurrido ante el foro de instancia en su escrito de oposición a la moción de desestimación presentada por Intertyre, que el término prescriptivo para interponer su acción comenzó a decursar el 6 de octubre de 1994, fecha en que le fue diagnosticada la lesión de discos de su espalda y en cuyo momento advino en conocimiento del daño reclamado.

Frente a tales alegaciones y controversias, el tribunal de instancia emitió el dictamen recurrido denegando la moción de desestimación promovida por Intertyre. En su dictamen quedó implícito, además, la existencia de una controversia en cuanto al punto de partida para el inicio del término prescriptivo de la acción instada por los recurridos, lo *que hacía improcedente la concesión de tal remedio solicitado. Candal v. CT Radiology Office, Inc.,* 112 D.P.R. 227 (1982).

### III

Como bien se ha resuelto, la prescripción es materia sustantiva y no procesal, regida por los principios que informan el derecho civil. *Olmo v. Young & Rubicam of P.R., Inc.,* 110 D.P.R. 740 (1981). Tiene su fundamento en la necesidad de poner fin a la inseguridad jurídica y a otros efectos adversos que surgen cuando se postergan o dejan pendientes posibles acciones judiciales. Persigue, también, el fin de sancionar el abandono de derechos por el titular de éstos. Scaevola, *Comentarios al Código Civil,* Tomo XXXII, (pt.1), Ed. 1965, a la pág. 237. Sus propósitos fueron explicados en *Colón Prieto v. Géigel,* 115 D.P.R. 232 (1984), indicando allí el Tribunal Supremo que *"[s]u innegable necesidad y valor responden a una presunción legal de abandono, derivada del transcurso de un tiempo determinado sin reclamar un derecho",* ello para pasar a indicar que *"ninguno de los intereses a los cuales responde es absoluto --de un lado salvaguardar un derecho y del otro, darle carácter definido a la incertidumbre de una posible reclamación -- sino que deben ser aquilatados en su justa proyección".* Así, expresó el Tribunal luego en *Vega Lozada, supra,* que *"evidentemente se trata de un asunto que admite ajustes judiciales, según lo requieran las circunstancias y nuestras nociones sobre lo que es justo".*

En perfecta armonía con lo antes expuesto, en *Colón Prieto v. Géigel, supra,* se había resuelto que el verdadero punto de partida para el inicio del término prescriptivo de una acción de daños y perjuicios es la fecha en que el agraviado supo del daño y pudo ejercitar su acción. Podemos así afirmar que en nuestra jurisdicción priva la teoría cognoscitiva del daño, lo que en apretada síntesis implica que el daño *"nace jurídicamente cuando se tiene conocimiento de una consecuencia lesiva causada por un acto culposo o negligente imputable a un actor cuya identidad se conoce".* Herminio M. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* **Publicaciones JTS, Inc.,** 1986, pág. 641. Ello es, a su vez, cónsono con lo dispuesto en el Art.1868 del Código Civil, 31 L.P.R.A. sec. 5298(2), que, en lo pertinente, dispone que prescriben por el transcurso de un año las acciones para exigir la responsabilidad civil por injuria o calumnia y por las obligaciones derivadas de la culpa o negligencia de que trata el Art. 1802, *supra,* **desde que lo supo el agraviado.**

Ahora bien, existen distintos tipos de daños, por lo que, dependiendo de su naturaleza, será su efecto en lo que respecta a la prescripción extintiva. Así, se han reconocido los daños sucesivos o continuados; los instantáneos o permanentes; daños cuya extensión o cuantía no se manifiesta de inmediato; daño evolucionario o latente, no identificable o conocible hasta el transcurso de determinado tiempo; daño que se oculta dolosamente por el autor; por daños múltiples, algunos de los cuales no son descubribles hasta más tarde; y el daño desconocido y no previsible que no puede detectarse hasta tiempo después del acto culposo. *Rivera Encarnación v. E.L.A.,* 113 D.P.R. 383 (1982). Ello requiere que en todo supuesto de prescripción se haga una determinación de cuándo surge ese conocimiento. Brau del Toro, *supra,* pág. 637. Por ello, y ante los intereses en conflicto entre el perjudicado y el actor culposo en cuanto al término prescriptivo, Brau del Toro reconoce que corresponderá *"a los tribunales interpretar las disposiciones estatutarias relativas a los elementos*

*determinantes del comienzo del término prescriptivo, que en nuestro Derecho se concretan en el concepto del momento en que se tiene conocimiento del daño"*, ello para expresar lo siguiente:

*"Reiteramos que sostenemos la posición que afirma que se debe distinguir entre (1) el momento en que ocurre un evento idóneo o adecuado para producir una consecuencia lesiva, (2) el momento en que esta consecuencia se produce, y (3) el momento en que dicha consecuencia se manifiesta y es reconocida. Si el acto, por idóneo que sea para tales efectos, en realidad...no produce una consecuencia lesiva susceptible de ser reconocida, nos enfrentamos a la realidad jurídica ineludible de que no hay daño y, por tanto, faltando uno de los elementos indispensables de la razón para reclamar remedio estatuida por el del Código Civil, no procede una acción en daños y perjuicios. En suma, el daño no es el acto culposo o negligente sino su consecuencia cuando ésta es reconocida o debe serlo empleando diligencia razonable. Una consecuencia lesiva que es previsible queda reconocida desde el momento en que puede preverse o anticiparse su ocurrencia con razonable probabilidad. (Cita omitida). Así, pues, el conocimiento de una "consecuencia lesiva" la convierte en un "daño", dicho en sentido jurídico."* Brau Del Toro, *supra*, pág. 638.

En lo que respecta a la consecuencia lesiva de un daño, nos ilustra Brau del Toro como sigue:

*"Desde luego, frecuentemente ocurre que una secuela de un daño no es previsible durante cierto tiempo determinado, manifestándose más tarde. En ese caso, la referida consecuencia lesiva se convierte en daño cuando se conoce, o cuando debe conocerse empleando diligencia razonable, o cuando se torna previsible. En ese caso, la nueva consecuencia lesiva conocida constituye un daño nuevo y distinto del daño original. Con el nuevo daño nacerá una nueva causa de acción para el perjudicado, cuyo término de prescripción comenzará a contar en el momento en que el perjudicado supo de este nuevo daño. La vasta mayoría de los tratadistas concuerdan en que cuando el nuevo daño es imprevisible, sólo empieza a contar el término desde que el agraviado lo conoce, esto es, desde que está consciente de que ha sufrido un daño adicional."* (Citas omitidas). Brau del Toro, *supra*, pág. 640.

Resulta así evidente que, en la correcta adjudicación de una controversia en la cual se reclama indemnización por daños, el juzgador de hechos puede verse enfrentado a hechos y circunstancias particulares, así como a la naturaleza de los daños, para determinar el punto de partida para el cómputo de la prescripción. En palabras del Tribunal Supremo, *"hechos distintos requieren soluciones diversas". Rivera Encarnación v. E.L.A., supra*, a la pág. 386, lo cual Brau ha interpretado como una implicación de que cada una de las circunstancias enumeradas puede exigir un resultado distinto. Brau Del Toro, *supra*, a la pág. 637.

*"Las circunstancias particulares del caso que nos ocupa requieren considerar ahora lo que la doctrina describe como daño cierto y lo que se denomina daño eventual, conceptuado por De Angel Yaguez como daño sobrevenido. [16] Por daño cierto se entiende aquél cuya existencia se conoce o es razonablemente previsible, aunque no sea posible fijar con exactitud su extensión, magnitud o valoración. Para ser indemnizable, **no puede ser puramente eventual, hipotético, o especulativo.** El daño deber ser conocido o previsible, **lo cual presupone una existencia al menos, la probabilidad suficiente de una existencia futura.** (Citas omitidas). Id., a la pág. 642. (Enfasis nuestro). Así, un daño de cualquier naturaleza se convierte en daño cierto en cuanto es conocido subjetivamente o cuando es previsible."*

Por su parte, el concepto de daño eventual se refiere a una consecuencia lesiva que aún no se ha realizado o manifestado, cuya ocurrencia depende de una contingencia aun no realizada y de incierta y problemática realización, que sólo sería compensable en el momento de su manifestación. Brau Del Toro, *supra*, a la pág. 652. Es por ello que postula De Angel Yaguez que el plazo prescriptivo para el ejercicio de la acción de este daño sobrevenido *"deberá correr a partir del momento en que estos daños son conocidos por la víctima, con independencia de que los daños originarios o primitivos hubieran dado o no lugar a la correspondiente reclamación...".* De Angel Yaguez, *supra*, a la pág. 342. Con igual parecer se manifiesta Borrell Maciá, quien al citar a Ennecerus, aunque refiriéndose al plazo de prescripción de los daños continuados, expone que: *"[si bien] no impide el comienzo de la prescripción el que el daño continúe desarrollándose y aumente... si posteriormente se manifiesta **otro daño** producido por el acto ilícito, por ejemplo, si la lesión externa resulta haber producido una*

*enfermedad grave interna o que el padecimiento al parecer transitorio, evoluciona para convertirse en enfermedad crónica grave, la prescripción de la pretensión de la indemnización de este daño [manifestado últimamente] sólo puede empezar entonces."* Antonio Borrell Maciá, *Responsabilidades derivadas de culpa extracontractual civil,* Ed. Bosch, 1942, pág. 276, nota al calce 7. (Enfasis nuestro).

Tomando como base este trasfondo fáctico, jurídico, doctrinal y jurisprudencial, veamos ahora si en el caso de autos erró el ilustrado tribunal de instancia al declarar No Ha Lugar la moción de desestimación de la peticionaria o si, por el contrario, a la luz de lo hasta aquí expuesto, no abusó de su discreción al así hacerlo. En el proceso habremos de tener presente que, a los fines de una moción para que se desestime la demanda, ésta debe ser interpretada lo más liberalmente posible a favor de la parte demandante y que únicamente se desestimará la acción si el demandante no tiene derecho a ningún remedio bajo cualesquiera hechos que se puedan probar en juicio a base de lo que ha alegado en la demanda. *Candal v. CT Radiology Office, Inc., supra; Moa v. E.L.A.,* 100 D.P.R. 573, 586 (1972).

El co-demandante señor Rogers sufrió un accidente del trabajo el 9 de junio de 1993. Su lesión fue diagnosticada como un espasmo muscular, diagnóstico que fue sostenido aun al momento de ser dado de alta originalmente, sin incapacidad, el día 3 de agosto del mismo año. La determinación del carácter de Patrono No Asegurado de Intertyre recayó el 10 de noviembre, siendo notificada el 9 de diciembre sin que fuera apelada oportunamente por el patrono, por lo cual advino final y firme. Así, argumenta Intertyre, invocando tal conocimiento de la lesión resultante y lo resuelto en Vega Lozada, *supra,* que la acción interpuesta por los recurridos está prescrita. Sin embargo, pierde de perspectiva la peticionaria que, siendo el daño un elemento esencial en toda acción en la cual se reclamen éstos, *"si el acto negligente o culposo, por idóneo que sea para tales efectos, en realidad no produce una consecuencia lesiva susceptible de ser reconocida, nos enfrentamos a la realidad jurídica ineludible de que no hay daño reclamable".* Brau del Toro, *supra,* a la pág. 638.

Se encontró así el tribunal de instancia con la responsabilidad y obligación legal de adjudicar judicialmente el punto de partida de la prescripción de la acción instada, mediante la moción de desestimación promovida por Intertyre. Con ese limitado alcance determinó el foro recurrido que no se encontraba en condición de adjudicar la procedencia y méritos del fundamento desestimatorio invocado, quedando implícito en su dictamen que no contaba con la prueba pertinente necesaria para adjudicar tal extremo. Con tal ejercicio de discreción no habremos de intervenir. Basta con señalar que el conocimiento del daño, el momento en que se obtiene tal conocimiento, y su aplicación al término prescriptivo para el inicio de la correspondiente acción indemnizatoria, constituyen un delicado problema de prueba e interpretación, Rivera Encarnación, *supra,* a la pág. 385, que no debe ser solventado livianamente.

## IV
Por los fundamentos antes consignados, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 156

1. Alegó, en síntesis, el demandante que para el 9 de junio de 1993, y siendo empleado de Intertyre, fue enviado a buscar una mercancia a determinado almacén, donde sufrió una lesión en la espalda mientras cargaba unas llantas de auto. Véase Demanda, Apéndice de la Petición de *Certiorari,* Alegación Núm. 6, a las págs. 37-38.

2. Véanse Alegaciones de la Demanda Núm. 21 y 22, Apéndice de la Petición de *Certiorari,* pág. 40.

3. Véase Apéndice de la Peticionaria, pág. 48.

**4.** El diagnóstico así vertido determinó la siguiente lesión: *"Left paracentral lateral herniated nucleus pulposum at L5-S1 encroaching the neural foramina, S1 nerve root. Diffuse bulging annulus at the L3-L4 and L4-L5 levels"*. Apéndice de la Peticionaria, pág. 49.

**5.** Véanse Alegaciones 27 a la 29 de la Demanda, Apéndice de la Petición de *Certiorari*, págs. 40 y 41.

**6.** Véase Alegación Núm. 30 de la Demanda, Apéndice de la Petición de *Certiorari*, págs. 41-42. Véase, además, el *"Operation Record"*, Apéndice de la Peticionaria, pág. 50, donde el procedimiento quirúrgico al cual fue sometido el señor Rogers se describe como *"Left L5 + S1 partial hemilaminectomies + diskectomy."*

**7.** Véase Alegación Núm. 26 de la Demanda, Apéndice de la Petición de *Certiorari*, pág. 40.

**8.** Véase Apéndice de la Petición de *Certiorari*, pág. 51.

**9.** En Vega Lozada, *supra*, se resuelve que:

*"El término prescriptivo para ejercitar la acción de daños y perjuicios, en casos como el de marras, comienza a transcurrir desde la fecha en que el Fondo notifique que el patrono no está asegurado."* Vega Lozada, *supra*. (Enfasis nuestro).

**10.** En lo pertinente, dispone el Art. 1868 como sigue:

*"Prescriben por el transcurso de un año:*

*1..............*

*2. La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sección 5141 desde este título desde que lo supo el agraviado."* (Enfasis nuestro.)

**11.** Véase Oposición a Moción de Desestimación, Apéndice de la Petición de *Certiorari*, págs. 18 a la 25.

**12.** Véanse Alegaciones Núm. 14 a la 20 y 24 a la 27 de la Dúplica, Apéndice de la Peticionaria, págs. 6 a la 8.

**13.** Ley Núm. 45 de 18 de abril de 1935, según enmendada.

**14.** En tales casos, por virtud de las disposiciones del Art. 16 de la ley, en la acción entablada en su contra, el patrono no podrá oponer las defensas de negligencia contributoria, asunción de riesgo o que la lesión fue producto de la negligencia de un contratista independiente.

**15.** Véanse Alegaciones Núms. 15 y 21 de la demanda, Apéndice de la Petición de *Certiorari*, págs. 38 y 40, respectivamente.

**16.** De Angel Yaguez, La Responsabilidad Civil, Universidad Deustros, Bilbao, pág. 342.